618 P.2d 894

**FIREMAN'S FUND INSURANCE COMPANY, Underwriters at Lloyds, London, and Landy Packing Company, and Gordon L. Goss, and James C. Hinsley and Larry G. Hinsley and Jerry D. Hinsley, Plaintiffs–Appellants,**

v.

**Roy TUCKER, Jr., Dixie C. Tucker, Ginerva G. Helms, G. L. Tucker, Cloma J. Beanblossom, Defendants–Cross–Claimants, Appellants,**

**and**

**The New Mexico State Highway Department, Defendant–Appellee.**

**No. 4307.**

Court of Appeals of New Mexico.

June 12, 1980.

Writ of Certiorari Quashed Oct. 9, 1980.

Steven L. Bell, Atwood, Malone, Mann & Cooter, P. A., Roswell, B. James Reeves, Campbell, Reeves, Burn, Dolan & Burn, P. A., Las Cruces, New Mexico, for plaintiffs–appellants.

John E. Conway, Durrett, Conway & Jordan, P. C., Alamogordo, for defendant–appellee.

## OPINION

LOPEZ, Judge.

This suit arose out of two separate accidents where a trailer–tractor collided with a cow on a public highway. The two cows were owned by Cross Claimant–Appellants. Plaintiffs sued the owners of the cows for negligence in failing to prevent their livestock from running on a fenced public highway and the Highway Department for failing to properly inspect and maintain the fence along the highway. The cattle owners cross–claimed against the Highway Department, asserting that any actionable negligence was imputable solely to the Highway Department whose statutory duty it was to maintain the fence. The trial court dismissed the complaint and cross–claim against the Highway Department on the grounds that the Department was immune from this suit under the New Mexico Tort Claims Act. We reverse.

The issue before us is whether the Tort Claims Act (§§ 41–4–1 to 41–4–25, N.M.S.A. 1978 and Supp.1979) grants sovereign immunity to the Highway Department for negligence in the construction or maintenance of fences along highways under its jurisdiction. We hold that the Act waives sovereign immunity for this type of suit.

Sovereign immunity in New Mexico is a statutory creation. In *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1975), the New Mexico Supreme Court abolished common law sovereign immunity. The Legislature responded by enacting the Tort Claims Act in 1976, reinstating governmental immunity except in eight classes of activity. Sections 41–4–4 to 41–4–12.

Appellants allege that the exception pertaining to liability for negligence in the maintenance of highways and streets applies to the case before us. That section reads in part:

A. *The immunity* granted pursuant to ... [this Act] *does not apply to liability for* damages resulting from bodily injury, wrongful death or property damage caused by the *negligence* of public employees while acting within the scope of their duties *in the maintenance of* or for the existence of *any* bridge, culvert, *highway*, roadway, street, alley, sidewalk or parking area. (Emphasis added.)

Section 41–4–11, N.M.S.A.1978.

They argue that since the state Highway Department has a statutory obligation to construct, inspect and maintain fences along highways under its jurisdiction, § 30–8–13, N.M.S.A.1978 [1] § 41–4–11(A) of the Tort Claims Act simply removes the bar of sovereign immunity which would otherwise prevent suits against the Department for its failure to carry out a statutory mandate.

The Highway Department reasons that § 41–4–11(A) does not confer liability for negligently maintained fences along state highways for two reasons: 1) because the statute does not specifically mention "fence"; and 2) because "fence" is not included in the usual meaning of "highway", and, consequently, the idea of "fence" is not anywhere in this statute. We reject both arguments.

The first argument would force a narrow construction on the statute which is not consistent with the guidelines of our Supreme Court. The direction indicated by that court in interpreting the Tort Claims Act has been toward a liberal, rather than a narrow, construction of the Act. *See, Holiday Management Co. v. City of Santa Fe*, 94 N.M. 368, 610 P.2d 1197 (1980); *City of Albuquerque v. Redding*, 93 N.M. 757, 605 P.2d 1156 (1980).

The second argument concentrates on the meaning of "highway" rather than on the meaning of "maintenance of a highway". While it is certainly true that, in ordinary usage, "fence" is not embraced in the meaning of "highway", it is not necessarily true that maintaining a highway does not include maintaining the fence alongside it.

■ Maintenance of a road or highway involves more than simply keeping the road surface in good repair. *Lynes v. St. Joseph County Road Commission*, 29 Mich.App. 51, 185 N.W.2d 111 (1970); *see, Miller v. County of Oakland*, 43 Mich.App. 215, 204 N.W.2d 141 (1972); *see also, Baker v. Ives*, 162 Conn. 295, 294 A.2d 290 (1972). In Michigan, as in New Mexico, the statutory scheme generally confers immunity on governmental bodies, but waives it in certain instances, including improperly maintained highways. The pertinent Michigan statute states explicitly, "The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, *shall extend only to the improved portion of the highway* designed for vehicular travel. * * *" (Emphasis added.) Mich. Comp.Laws Ann. § 691.1402. In *Lynes*, the Michigan court found that traffic signals are an integral part of the improved portion of the highway because they relate directly to the statutory duty of the state and county to maintain highways in a condition safe and fit for travel. Consequently, sovereign immunity did not bar the plaintiffs suit for negligent maintenance of a stop sign which caused an auto collision. According to McQuillen, similar reasoning is generally used to require municipalities, under a statutory obligation to maintain the streets, to prevent things adjoining or near the way from falling or otherwise coming into the streets and becoming obstructions to travel there. 19 McQuillen, *Municipal Corporations* Ch. 54 (1967). He writes:

[I]n order to make a municipality liable, it is not necessary that the dangerous place be within the limits of the street. It is sufficient to make the municipality liable that the dangerous place is outside the street limits but so near thereto that

---

1. § 30–8–13, N.M.S.A.1978 reads in pertinent part:

B * * * The state highway department shall:

(1) unless it makes a fact determination that no livestock can enter the highway from a portion left unfenced, construct, inspect regularly and maintain fences along all highways under its jurisdiction. * * *

it endangers travel thereon because of the want of protecting barriers * * * and the probability of injury in case of * * * [accident] * * *.

*Id.* § 54.69 at 175.

■ In providing the highway exception to the general grant of governmental immunity, the New Mexico Legislature intended to protect the general public from injury by imposing liability upon governmental agencies when they fail to maintain safe public highways. No new duties are created by the Tort Claims Act. The duty of the Highway Department to construct and maintain certain fences along state highways existed before the Tort Claims Act was enacted.

In determining if liability for negligently maintained fences is conferred upon the Highway Department by § 41–4–11, we use the functional analysis suggested in *Redding, supra.* In that case, the issue was whether a drain grate in a road should be classified under the section of the Tort Claims Act dealing with highways and roads or the section referring to waste disposal. The Supreme Court found the latter section to be applicable, because the *primary purpose* of the sewer grate was the disposal of waste water and silt from the roadbed of the street. Thus, in the instant case, if the primary purpose of the highway fence is to keep the highway safe for the motoring public, rather than to keep trespassers off private land, then the effect of § 41–4–11 is to lift the bar of sovereign immunity in suits against the Highway Department for alleged violations of § 30–8–13(B).

■ A brief review of the history of § 30–8–13(B) is helpful in determining the primary purpose of the statute. In the early days, the "open range" rule, which relieved an owner of livestock from any duty to keep his animals off a public highway, prevailed in New Mexico. Thus a rancher was not required to fence his property to keep his cattle off the road. The New Mexico Supreme Court abolished this rule in 1965. In *Grubb v. Wolfe,* 75 N.M. 601, 408 P.2d 756 (1965), the court said that

the owner of livestock may be liable for injuries to motorists resulting from collisions with his animals due to his negligence in permitting them to be on the highway. This decision placed the burden of fencing on the cattle owners in order to protect the motoring public from collisions with cattle. The Legislature reacted to the *Grubb* decision by enacting Laws 1966, ch. 44 § 1 [now codified, as amended, as § 30–8–13(B)] which shifted the responsibility for the construction and maintenance of fences along state highways from the cattle owners, whose property lay adjacent to the highways, to the Highway Department. *See generally,* 6 Nat.Resources J. 306 (1966). The purpose of § 30–8–13 [formerly § 40A–8–10, N.M.S.A.1953] is to protect the motoring public. *Mitchell v. Ridgway,* 77 N.M. 249, 421 P.2d 778 (1966); *see, Dean v. Biesecker,* 87 N.M. 389, 534 P.2d 481 (1975).

■ The Legislature is presumed to know the laws in existence. *State v. Trivitt,* 89 N.M. 162, 548 P.2d 442 (1976). Section 30–8–13(B) pre–dated the Tort Claims Act. Consequently, when it enacted the Act, the Legislature was aware of the statutory obligation of the Highway Department to construct and maintain fences along public highways where necessary to protect the public from cattle straying into the way. The purpose of the waiver of sovereign immunity in the maintenance of highways was also to protect the public. The Supreme Court of Utah found that the purpose and effect of their Governmental Immunity Act was to remove sovereign immunity in situations where formerly, but for sovereign immunity, there would have been liability. *Stevens v. Salt Lake County,* 25 Utah 2d 168, 478 P.2d 496 (1970). The same is true of the New Mexico Tort Claims Act. The Legislature declared:

Liability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty * *.

Section 41–4–2(B), N.M.S.A.1978. The traditional tort concepts of duty include the recognition that a duty may be imposed by the Legislature. Because the Legislature

had already imposed the burden on the Highway Department of constructing and maintaining fences when necessary along public highways, the waiver of sovereign immunity for negligence in the maintenance of highways includes negligence in the maintenance of those fences. A highway through cattle country in New Mexico is just as dangerous without a fence as it is with a large pothole in it. Maintaining the highway means keeping it safe for public use.

The dismissal below is reversed and the trial court is ordered to proceed in a manner consistent with this opinion.

IT IS SO ORDERED.

WOOD, C. J., specially concurring.

WALTERS, J., concurs.

WOOD, Chief Judge (specially concurring).

I join in the result reached by the majority, however, I disagree with their reasoning.

Because liability under the Tort Claims Act is based upon traditional tort concepts of duty and because (at the present stage of this case) we must consider that the Highway Department is liable under § 30–8–13(B), N.M.S.A.1978, the majority hold that the waiver of immunity in the maintenance of highways includes a waiver of immunity in the maintenance of fences. This reasoning disregards the plain wording of § 41–4–4(A), N.M.S.A.1978 (1979 Cum.Supp.); there is immunity except as provided in the Tort Claims Act.

The majority view Supreme Court decisions as giving a "liberal" interpretation of the Tort Claims Act. *Holiday Management Co. v. City of Santa Fe*, No. 12,867 filed April 11, 1980 [St.B.Bull. Vol. 19, No. 17], involved the meaning of the specific provision therein discussed. *City of Albuquerque v. Redding*, 93 N.M. 757, 605 P.2d 1156 (1980) held, in connection with a drain grate in a street, that the specific Tort Claims Act provision was that dealing with solid or liquid waste collection. Neither decision required a "liberal" interpretation for the result reached.

The Highway Department contends the Tort Claims Act should be strictly construed because in derogation of sovereign immunity. This is not an appropriate decisional approach because the issue is the meaning of legislation that both grants immunity and waives immunity in specified instances.

This case involves one of those waivers; that is, exceptions from immunity. My view is that those claiming an exception from immunity must establish that exception as being within the words of the exception as well as the reason for the exception. *State v. Board of County Commissioners*, 62 N.M. 137, 306 P.2d 259 (1957). In my opinion, the Supreme Court decisions in *Redding*, supra, and *City of Santa Fe*, supra, utilized this approach, rather than a rule of "liberal" construction.

The applicable waiver of immunity provision, § 41–4–11, N.M.S.A.1978, waives immunity for negligence in the maintenance of any "bridge, culvert, highway, roadway, street, alley, sidewalk or parking area." "Fence" is not included in this listing; if there has been a waiver in connection with the maintenance of fences, "fence" must be included within the meaning of the words used. The issue is whether "fence" comes within the meaning of "highway".

The parties recognize that "highway" ordinarily has a meaning broader than bridge, culvert or roadway. However, because "highway" is included within a list of words of restrictive meaning, the Highway Department contends that "highway" should be given a restrictive meaning. A law in effect in 1976, when the Tort Claims Act was enacted, included terms of restrictive meaning without restricting the meaning of "highway". Section 67–7–10, N.M.S.A.1978 states that it is unlawful for a person "to injure or damage any public highway or street or any bridge, culvert, sign, signpost or structure upon or used or constructed in connection with any public highway or street * * *." I do not agree that the inclusion of "highway" in the words listed in § 41–4–11, supra, shows a legislative

intent to restrict the meaning of "highway".

Since the Legislature did not define "highway" in § 41–4–11, supra, what did the Legislature intend as to the meaning of "highway"? I agree with the majority that the appropriate decisional approach is to apply the presumption that the Legislature was informed of the law in existence at the time of enactment of the Tort Claims Act in 1976. *Bettini v. City of Las Cruces*, 82 N.M. 633, 485 P.2d 967 (1971). At that time § 64–14–16(a), N.M.S.A.1953 Comp. (2d Repl. Vol. 9, pt. 2), repealed by Laws 1978, ch. 35, § 554, defined street or highway as:

The entire width between the boundary lines of every way of whatever nature when any part thereof is open to the use of the public, as a matter of right, for purposes of vehicular travel.

A fence within "[t]he entire width", under this definition, is a part of the highway. I would hold that "highway" in § 41–4–11, supra, has, as its meaning, the definition stated in § 64–14–16(a), supra. On this basis, I join in reversing the order dismissing the claims against the Highway Department.