687 P.2d 728

**Susanne M. SCHEAR,
Petitioner-Appellant,**

v.

**BOARD OF COUNTY COMMISSIONERS
OF the COUNTY OF BERNALILLO,
and James Jimerson, Bernalillo County
Sheriff, Respondents-Appellees.**

No. 15324.

Supreme Court of New Mexico.

Aug. 6, 1984.

Rehearing Denied Sept. 12, 1984.

Joseph M. Fine, Parham & Fine, P.A.,
Albuquerque, for petitioner.

Karen C. Kennedy, Shaffer, Butt, Thornton & Baehr, P.C., Albuquerque, for respondents.

William G. Gilstrap, P.C. New Mexico Trial Lawyers Assoc., Albuquerque, amicus curiae.

## OPINION

WALTERS, Justice.

The Court of Appeals upheld the trial court's dismissal of petitioner's complaint on the basis of her failure to state a claim upon which relief may be granted. The complaint had alleged that respondents' agents did not respond to a call reporting a crime in progress and requesting assistance, and that petitioner suffered a brutal rape and torture as a result of the agents' inaction. We granted certiorari and now reverse the dismissal by the trial court and the decision of the Court of Appeals.

The question presented is whether a governmental entity and its law enforcement officers may be held liable, after receiving notice, for negligently failing to take adequate action to protect a citizen from imminent danger and injuries.

■ On a motion to dismiss, we assume the truth of the facts alleged in the complaint. *Buhler v. Marrujo*, 86 N.M. 399, 524 P.2d 1015 (Ct.App.1974). Those facts are fully described in the opinion of the Court of Appeals and we need not repeat them. *Schear v. Board of County Commissioners*, 23 SBB 192 (Ct.App.1984). Petitioner alleged that respondents' negligence in failing to adopt proper procedures for responding to reported criminal acts, and in failing to respond or investigate, was the direct and proximate cause of her injuries.

■ Negligence is generally a question of fact for the jury. *New Mexico State Highway Department v. Van Dyke*, 90 N.M. 357, 563 P.2d 1150 (1977). A find-

ing of negligence, however, is dependent upon the existence of a duty on the part of the defendant. *White v. City of Lovington*, 78 N.M. 628, 435 P.2d 1010 (Ct.App. 1967). Whether a duty exists is a question of law for the courts to decide. *Southern Union Gas Co. v. Briner Rust Proofing Co.*, 65 N.M. 32, 331 P.2d 531 (1958). Our statutes place a duty on law enforcement officers to investigate violations of the criminal law.

> *It is hereby declared to be the duty* of every sheriff, deputy sheriff, constable and every other peace officer *to investigate all violations of the criminal laws* of the state *which are called to the attention of any such officer* or of which he is aware * * * *

NMSA 1978, § 29–1–1 (Repl.Pamp.1979) (emphasis added).

The Court of Appeals, relying on its opinion in *Doe v. Hendricks*, 92 N.M. 499, 590 P.2d 647 (Ct.App.1979), held that the duty imposed by Section 29–1–1 was a duty owed to the general public and that, absent a "special duty" owed to petitioner, failure to perform the duty or an inadequate or erroneous performance would not give rise to an individual cause of action. The Court of Appeals noted the absence of a special duty owed to petitioner in this case and held that the "public duty-special duty" rule precluded petitioner's action.

*Doe* is not controlling. Although the facts in *Doe* are similar to the facts in this case,[1] the operative statute in that case was the Peace Officers Liability Act, NMSA 1953, Sections 39–8–1 to –17 (Supp. 1975), not the Tort Claims Act, NMSA 1978, Sections 41–4–1 to –29 (Repl.Pamp. 1982 and Supp.1983). Section 39–8–4 of the Peace Officers Liability Act protected police officers from liability while in the performance of a public duty. The court in *Doe*, declaring that the applicable statute imposed a duty on the officer to the gener-

1. A boy, age 12, was stopped on his way home from school and dragged into a vacant house by an adult male. Two children witnessed the incident and ran to tell their brother and sister who then called the police. The dispatcher immedi-

ately informed the Chief of Police, who chose to continue a conversation with a visitor rather than to respond. In the meantime, the child was sexually assaulted by the adult male.

al public and that no "special relationship" (i.e., "privity, a direct relationship or contact between the victim and the police," 92 N.M. at 503, 590 P.2d at 651) existed which would give rise to a "special duty," held that no liability could be imposed on the basis of the officer's failure to act.

With the enactment of the Tort Claims Act, the Police Officers Liability Act was repealed in 1976. 1976 N.M. Laws, ch. 58, § 27. Unlike *Doe*, liability in this case is dependent upon an interpretation of the Tort Claims Act. The extent of its application is set forth in Section 41–4–2(B):

> The Tort Claims Act shall be read as abolishing all judicially-created categories such as "governmental" or "proprietary" functions and "discretionary" or "ministerial" acts previously used to determine immunity or liability. Liability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty.

Section 41–4–12 provides further:

> The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

Nothing in the statute refers to performance of either public or special duties.

■ The Court of Appeals held that the court in *Doe* relied not on the Police Officers Liability Act, but rather on the "common-law public versus special duty distinction," and that that distinction is one of the "traditional tort concepts of duty" which the Tort Claims Act did not abolish. That statement is too broad. As we discuss

hereafter, the "public duty" distinction is too closely linked to the concept of sovereign immunity, from which Section 41–4–12 provides an exception, to have been included by the legislature within the meaning of "traditional tort concepts of duty."

The Court of Appeals' opinion further declares that the language: "when caused by law enforcement officers," requires "direct causation" by the officers in order for there to be liability. Its observation that "the assault was committed not by a law enforcement officer but by a third party" demonstrates its misunderstanding of *Methola v. County of Eddy*, 95 N.M. 329, 622 P.2d 234 (1981), where we said that "caused by" does not mean "committed by," but instead has the usual meaning of "proximate cause" as a requirement for liability in an ordinary negligence case. *Id.* at 332, 622 P.2d at 237. We again specifically hold that law enforcement officers need not be the *direct cause* of injury (in the sense of having inflicted it) in order for liability to attach.

■ We disagree, too, with the Court of Appeals' interpretation of the basis for decision in *Doe*. It appears to us that the "public duty-special duty" discussion in *Doe* necessarily arose from the statutory (rather than any common law) provision excepting police officers from liability when engaged in performance of public duty. Repeal of that statute undercut any precedential effect of *Doe*. It is clear to us, in any event, that the Tort Claims Act abolished the "public duty-special duty" distinction in this jurisdiction.

The "public duty-special duty" rule bears a direct relationship to the doctrine of sovereign immunity. *Adams v. State*, 555 P.2d 235 (Alaska 1976); *Martinez v. City of Lakewood*, 655 P.2d 1388 (Colo.App. 1982). "[I]t is clear that [the "general duty-special duty" dichotomy] * * * is a function of municipal sovereign immunity and not a traditional negligence concept which has meaning apart from the governmental setting. Accordingly, its efficacy is dependent on the continuing vitality of the doctrine of sovereign immunity." *Com-*

*mercial Carrier Corp. v. Indian River County,* 371 So.2d 1010, 1015 (Fla.1979). Although many jurisdictions have relied on the distinction (*see, e.g., Massengill v. Yuma County,* 104 Ariz. 518, 456 P.2d 376 (1969); *Trautman v. City of Stamford,* 32 Conn.Supp. 258, 350 A.2d 782 (1975); *Simpson's Food Fair, Inc. v. City of Evansville,* 149 Ind.App. 387, 272 N.E.2d 871 (1971); *Riss v. City of New York,* 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860 (1968); *Walkowski v. Macomb County Sheriff,* 64 Mich.App. 460, 236 N.W.2d 516 (1975)), the development in the law has been to abolish it in those jurisdictions where the matter has been more recently considered or reconsidered. *See Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982) (overruling *Massengill*); *Adams v. State; Martinez v. City of Lakewood; Commercial Carrier Corp. v. Indian River County* (declaring *Modlin v. City of Miami Beach,* 201 So.2d 70 (Fla.1967) to have no effect following legislative waiver of governmental immunity); *Wilson v. Nepstad,* 282 N.W.2d 664 (Iowa 1979); *Brennen v. City of Eugene,* 285 Or. 401, 591 P.2d 719 (1979); *Coffey v. City of Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 132 (1976). "[T]he trend in this area is toward liability. The 'public duty' doctrine has lost support in four of the eight jurisdictions relied upon by the city [for its argument that it owed no duty of ordinary care to an individual citizen]." *Wilson v. Nepstad,* 282 N.W.2d at 667. Those courts have demonstrated a reasoned reluctance to apply a doctrine that results in a duty to none where there is a duty to all. *See Adams v. State; Martinez v. City of Lakewood.* The court, in *Adams,* said:

> [W]e consider that the "duty to all, duty to no-one" doctrine is in realty a form of sovereign immunity, which is a matter dealt with by statute in Alaska, and not to be amplified by court-created doctrine. An application of the public duty doctrine here would result in finding no duty owed the plaintiffs or their decedents by the state, because, although they were foreseeable victims and a private defendant would have owed such a duty, no

"special relationship" between the parties existed. Why should the establishment of duty become more difficult when the state is the defendant? Where there is no immunity, the state is to be treated like a private litigant. To allow the public duty doctrine to disturb this equality would create immunity where the legislature has not.

555 P.2d at 241–42 (footnote omitted).

The distinction between "public duty" and "private duty" or "special duty" is no less arbitrary and no less a vestige of the doctrine of sovereign immunity than are the "governmental-proprietary" and "discretionary-ministerial" distinctions abolished by Section 41–4–2(B) of the Tort Claims Act. *See Coffey v. City of Milwaukee.* In the context of this case there is no significant difference between the provisions of our Tort Claims Act and the statute discussed by the court in *Brennen v. City of Eugene.* We apply to Section 41–4–2(B) the holding of *Brennen:*

> [W]e conclude * * * that any distinction between "public" and "private" duty is precluded by statute in this state * * * [Our statute] provides that " * * * every public body is liable for its torts and those of its officers, employes [sic] and agents * * * *whether arising out of a governmental or proprietary function.*"

285 Or. at 411, 591 P.2d at 725 (footnote omitted) (emphasis supplied by Oregon Court). We agree with those jurisdictions, cited above, which hold that the "public duty-special duty" rule has no viability outside the context of sovereign immunity.

Our confidence in the correctness of this approach is bolstered by the fact that neither Sections 41–4–2 nor 41–4–12 of the Tort Claims Act excludes peace officers from liability while performing "any public duty," as was provided by Section 39–8–4 before that statute was repealed. We abolished sovereign immunity as a part of the common law of this jurisdiction in *Hicks v. State,* 88 N.M. 588, 544 P.2d 1153 (1975). The Tort Claims Act, which re-established sovereign immunity and specifically except-

ed certain governmental employees from that immunity, is in derogation of the common law and is to be strictly construed to the extent that it modifies the common law. *Methola v. County of Eddy*, 95 N.M. 329, 622 P.2d 234 (1980). Had the legislature intended the dichotomy between a law enforcement officer's special (or private) duty and public duty to continue as a basis for immunity rather than to have been abolished entirely by repeal of Section 39–8–4, we are confident that Section 41–4–12 would have been amended at the same time to so provide.

Moreover, were we to apply the "public duty" rule to this case, we would resurrect a doctrine which, if it ever had been part of the common law of this jurisdiction, has not been applied to any case of which we are aware since passage of the Tort Claims Act. In *Holiday Management Co. v. City of Santa Fe*, 94 N.M. 368, 610 P.2d 1197 (1980), we held that a city may be liable to a property owner for damage caused by the negligent maintenance of its sewage system. Apparently no argument was made that the public nature of the city's duty to maintain the sewage system should preclude its liability. We stated that "[n]egligence resulting from a failure to use or the improper use of sewer maintenance funds was not intended to be swept under a governmental immunity rug, where such negligence has resulted in damage to private property." 94 N.M. at 369, 610 P.2d at 1198.

In *Methola v. County of Eddy* we interpreted Section 41–4–12. *Methola* concerned three cases in which jail inmates sued those responsible for operating the jails for negligent supervision when plaintiffs were assaulted by other inmates. The Court of Appeals reversed the judgments for plaintiffs in all three cases on the ground that defendants were immune from suit. We reversed the Court of Appeals, holding that Section 41–4–12 excepted from immunity the negligence of law enforcement officers which caused injuries:

> Since the Tort Claims Act is in derogation of the common law, and apparent

legislative intent to expand liability of law enforcement officers is shown in the 1977 amendment discussed above [to include liability for "personal injury"], we conclude that the Legislature intended "caused by" in Section 41–4–12 to include those acts enumerated in that section which were caused by the *negligence* of law enforcement officers while acting within the scope of their duties.

95 N.M. at 333, 622 P.2d at 238 (emphasis in original).

The Court of Appeals in this case attempted to distinguish *Methola* on the basis that "defendants in *Methola* had a common law duty of custodial care whereas here the only duty is to the public at large." Upon that perceived distinction, the Court of Appeals held that the law enforcement officers in this case had to have been the "direct cause" of petitioner's injury in order to fall within the scope of Section 41–4–12.

■ We cannot agree with the analysis of the Court of Appeals. Not only does it conflict with our *Methola* opinion regarding the meaning of "caused by," but it also creates an exception to Section 41–4–12 dependent upon the public or private nature of the injured party that does not exist in the statute itself. Either all actions for injuries suffered by an officer's negligence were within the contemplation of the Legislature when it drafted Section 41–4–12, or they were not. We specifically held in *Methola* that such actions *do* come within the scope of Section 41–4–12; as an element of an action for negligence, "cause" applies to acts of omission as well as of commission. Thus, the fact that this petitioner's injuries were inflicted by a third party does not automatically preclude her action against respondents, nor does the fact that the Sheriff's Department owed a duty to the public mean that it owed no duty to those persons who make up the public.

We would observe that the duty of custodial care discussed in *Methola* could as well have been characterized as a duty to a certain segment of the public, *i.e.*, the jail

population. Although we did not apply the "public duty" rule in *Methola,* respondents seemingly persuaded the Court of Appeals that it should control in this case upon the dubious ground that the officers' duty of reasonable and ordinary care was owed to a "larger" public. That is just the sort of arbitrary distinction the legislature abolished in Section 41–4–2(B).

The Court of Appeals itself held, in *Fireman's Fund Insurance Co. v. Tucker,* 95 N.M. 56, 618 P.2d 894 (Ct.App.1980), that the highway department could be sued for negligent maintenance of fences along state highways. The applicable section of the Tort Claims Act, Section 41–4–11(A), pertinent to that case provides:

> The immunity granted pursuant to ... [this Act] does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the maintenance of or for the existence of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area.

The Court of Appeals said:

> In providing the highway exception to the general grant of governmental immunity, the New Mexico Legislature intended to protect the general public from injury by imposing liability upon governmental agencies when they fail to maintain safe public highways. No new duties are created by the Tort Claims Act. The duty of the Highway Department to construct and maintain certain fences along state highways existed before the Tort Claims Act was enacted.

95 N.M. at 59, 618 P.2d at 897.

We see no significant difference between *Fireman's Fund* and the instant case. Just as Section 41–4–11(A) provides that there shall be no immunity for damages caused by public highway employees who negligently perform their duties, Section 41–4–12, as interpreted in *Methola,* provides that law enforcement officers are liable for the harm caused by the negligent performance of their duties. Section 41–4–

12 does not create new duties for law enforcement officers; their duty to investigate reported violations of the criminal law is imposed by Section 29–1–1. That duty is no more nor less a "public duty" than is the duty of the highway department to construct and maintain fences along state highways for the protection of those who use the highways. Both law enforcement officers and employees of the highway department are government employees. We are unable to find a basis in the Tort Claims Act or a rationale in public policy for holding that, while employees of the highway department may be held liable to individuals for the negligent performance of a public duty, law enforcement officers may not. Indeed, to do so would be to interpret portions of the Tort Claims Act relating to "within the scope of their duties" differently, providing immunity through the "public duty" test in one instance and ignoring it in the other. If any such distinctions to preserve immunity are to be made, they must be made by the legislature. *See, e.g.,* Sections 41–4–4(A) and 41–4–13.

We are mindful of the special and important role played in our society by law enforcement agencies. Nevertheless, we are not persuaded that our decision today will create an undue burden on either law enforcement agencies or the governmental units which must ultimately bear the financial burden of liability. Strict liability for failure to adequately perform a duty is not imposed by this opinion. Liability will not attach until all of the elements of negligence have been proved, including duty, breach of duty, and proximate cause. The spectre of dire financial consequences to municipalities raised by some courts and referred to by the Court of Appeals is no more real in the context of law enforcement officers' liability for negligence than it has proved to be in any other area in which sovereign immunity has been abolished. This case may represent only an isolated incident. No matter; we are confident that any amounts associated with programs aimed at reducing law enforcement

officers' negligence, or awarded to victims of negligent performance of duty, will be far outweighed by the advantage to society of more responsive agencies.

■ We have consistently demonstrated our support for those enlightened trends in tort law which reflect concern for tort victims, and the compensatory nature of tort remedies. *See Ramirez v. Armstrong*, 100 N.M. 538, 673 P.2d 822 (1983) (tort of negligent infliction of emotional distress exists in New Mexico); *Lopez v. Maez*, 98 N.M. 625, 651 P.2d 1269 (1982) (tavern keepers liable to third parties for continuing to serve intoxicated patrons who thereafter inflict injuries); *Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981) (abolition of contributory negligence as a complete bar to recovery). We will not now breathe new life into a rule which, as a ghost of sovereign immunity, operates as a denial of a cause of action and is inconsistent with both *Hicks v. State* and Section 41–4–2(B) of the Tort Claims Act. We hold that no distinction shall hereafter be drawn with regard to the "public" or "special" duty of governmental employees whose immunity to suit for acts of negligence has been excepted under the Tort Claims Act.

■ We therefore hold that petitioner's complaint states a claim for relief against members of the Bernalillo County Sheriff's Office and their principals. Accepting the allegations in the complaint as true, it shall be for the jury demanded in this case to determine whether the duty to investigate, imposed by Section 29–1–1, was breached and, if so, whether such conduct was negligence that proximately caused petitioner's injuries.

The judgment of the trial court and the decision of the Court of Appeals are reversed. The cause is remanded for reinstatement on the trial court's jury docket.

IT IS SO ORDERED.

FEDERICI, C.J., and SOSA, Senior Justice, concur.

RIORDAN and STOWERS, JJ., dissent.

STOWERS, Justice, dissenting.

We dissent.

This case is before this Court on a petition for writ of certiorari to determine whether the Court of Appeals erred in affirming the trial court's dismissal of the petitioner's complaint. The majority, in reversing the trial court and the Court of Appeals, today holds that the petitioner's complaint states a claim for relief against the respondents. In so doing, the majority has concluded that there is no distinction between the public or private duties of governmental employees. In reaching this conclusion, the majority disregards existing case law in which this very issue was previously decided.

In the case of *Doe v. Hendricks*, 92 N.M. 499, 590 P.2d 647 (Ct.App.1979) under a similar set of facts involving a failure by the police to respond to a citizen's request for assistance, the Court of Appeals held that the lack of a special duty running from the police to the victim precluded any recovery. The court in *Doe* went on to distinguish between the duties owed to the general public from those owed to individuals. *Id.* at 501–502, 590 P.2d at 649–50. Therefore, *Doe* stands for the proposition that where a duty is owed to an individual, as opposed to the general public, a failure to perform that duty could result in an individual action for damages.

The majority, however, arbitrarily determines that *Doe* is not controlling, claiming that the operative statute in that case was the repealed Peace Officers Liability Act, NMSA 1953, 2d Repl.Vol. 6 (1972), Sections 39–8–1 to –17 (Supp.1975), and not the Tort Claims Act, NMSA 1978, Sections 41–4–1 to –29 (Repl.Pamp.1982 and Supp.1983). This is incorrect.

The majority effort to distinguish *Doe* is misplaced. The decision in *Doe* was not based on the Peace Officers Liability Act. The Peace Officers Liability Act was cited in *Doe* as an example of law which protected law enforcement officers from liability while in the performance of public duties. The main focus of *Doe* was the common law distinction between public duty and

special duty. The majority fails to recognize that the issue in the present case is not one of immunity, but rather a question of duty.

The majority opinion mistakenly states that "liability in this case is dependent upon an interpretation of the Tort Claims Act." In citing Sections 41-4-2(B) and 41-4-12, the majority concludes that "[n]othing in the statute refers to performance of either public or special duties." In reaching this conclusion, the majority fails to recognize that Section 41-4-2(B) provides in pertinent part:

> Liability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty.

Nevertheless, the majority persists in claiming that the public duty/special duty distinction in *Doe* arose from a statutory provision and that the repeal of the statute undercuts the precedential importance of *Doe*. We disagree. The public versus special duty distinction is a doctrine based on traditional tort concepts of duty which the Tort Claims Act specifically adopts in Section 41-4-2(B).

Moreover, Section 41-4-12 provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico *when caused by law enforcement officers while acting within the scope of their duties.* (Emphasis added.)

This section of the Tort Claims Act specifically lists those acts for which liability attaches. However, the type of liability created by the majority opinion is not found in this section. The Legislature intended for law enforcement officers to be responsible for certain actions caused by officers acting within the scope of their duties. In enacting this statute, we presume that the Legislature was informed as to existing common law. *Bettini v. City of Las Cruces,* 82 N.M. 633, 485 P.2d 967 (1971). Therefore, had the Legislature intended that law enforcement officers be subject to any additional type of liability, the Legislature would have so indicated.

The majority points out that in *Methola v. County of Eddy,* 95 N.M. 329, 622 P.2d 234 (1980), this Court construed the term "caused by" to allow recovery against jail officials for injuries to a prisoner caused by other inmates. However, in *Methola,* the negligent officers had undertaken a specific duty to protect those inmates in their custody. The majority states that the "duty of custodial care discussed in *Methola* could as well have been characterized as a duty to a certain segment of the public, *i.e.,* the jail population." This is incorrect. The population of a jail is in no way comparable to the general public. In the present case, the duty owed to the petitioner could only be characterized as a duty owed to the general public. The majority fails to recognize that no liability arises from this type of duty.

It is well settled that a finding of negligence is dependent on the existence of a duty on the part of the defendant. *See* NMSA 1978, UJI Civ. 16.1 (Repl.Pamp. 1980); *White v. City of Lovington,* 78 N.M. 628, 435 P.2d 1010 (Ct.App.1967). Whether a duty exists is a question of law for the courts to decide. *Southern Union Gas Co. v. Briner Rust Proofing Co.,* 65 N.M. 32, 331 P.2d 531 (1958). Furthermore, on a motion to dismiss under NMSA 1978, Civ.P. Rule 12(b)(6) (Repl.Pamp.1980), the appellate court assumes the truth of the facts alleged in the complaint. *Buhler v. Marrujo,* 86 N.M. 399, 524 P.2d 1015 (Ct.App. 1974). In the present case, the Court of Appeals properly affirmed the dismissal of the petitioner's complaint, and correctly held that under the facts pled in this case the duty owed was to the general public and the failure to perform that duty did not

give rise to a private cause of action. The majority today creates a new cause of action. In so doing, the majority ignores the law and provides no guidance as to what actions by a law enforcement officer can now be considered negligent. The order dismissing the petitioner's complaint should be affirmed.

For these reasons, we dissent.

STOWERS and RIORDAN, JJ., dissent.