710 P.2d 733 (1985)
103 N.M. 539
In the Matter of the ESTATE OF Frances H. CRUSE, Deceased,
Leo TYRRELL, Jr., Plaintiff-Appellant,
v.
Ann T. McCAW, Defendant-Appellee.
No. 15838.
Supreme Court of New Mexico.
December 12, 1985.
Martin, Cresswell, Hubert & Hernandez, Charles W. Cresswell, Las Cruces, for plaintiff-appellant.
Pickett, Bates & Holmes, Lloyd O. Bates, Jr., Las Cruces, for defendant-appellee.

OPINION
FEDERICI, Chief Justice.
Plaintiff-appellant Leo D. Tyrrell, Jr. (plaintiff), as personal representative of the *734 estate of decedent Frances H. Cruse, brought this action seeking the trial court's construction of decedent's will based upon an alleged mistake of fact, or alternatively to have the court enforce a settlement agreement among the heirs. Following a trial without jury, the trial court held that the language of the will was unambiguous and that any mistake of fact that the testatrix might have made in her will was immaterial. The court also held that there was no valid settlement agreement among the heirs. The court held that the estate should be distributed as directed in the will. During trial the court refused to accept as evidence documents offered by plaintiff, holding that the documents were insufficient as a matter of law to show a family settlement agreement under NMSA 1978, Section 45-3-912. Plaintiff appealed to this Court.
We affirm the trial court's construction of the will. We reverse with respect to the family settlement agreement, and remand to the trial court for the purpose of taking evidence on this issue.
The fourth paragraph of the testatrix' will provides for her four adult children as follows:
4. It is my intention by this Will, to my way of thinking, to equalize in my own mind what has been received by my children and what will be received by my children. My thinking shall control as to the values which I place in this paragraph. I am not counting smaller gifts, in my mind, but I am counting larger gifts. It is my thought, and this will be the basis of this paragraph of my will, whether I am wrong in any way in my thinking as to such values or not, but I consider to start off with that I have given my son, Leo D. Tyrrell, Jr., the value of $130,000.00 and I have given to my daughter, Jean T. Hiestand, the value of $100,000.00, and I have given nothing to my daughters, Ann T. McCaw and Nancy T. Klein. Therefore, from the remainder of my estate, after paying for the matters mentioned in Paragraph No. 1 above, I give, devise and bequeath as follows: First, to Ann T. McCaw and Nancy T. Klein each the sum of $100,000.00; second, if there still be assets within my estate, I give, devise and bequeath to Ann T. McCaw, Nancy T. Klein and Jean T. Hiestand each the sum of $30,000.00; thirdly, if there remain assets in my estate still to be distributed, I give, devise and bequeath the same to my four children, Ann T. McCaw, Jean T. Hiestand, Leo D. Tyrrell, Jr., and Nancy T. Klein, share and share alike. (Emphasis added.)
In fact, Jean T. Hiestand had never received a $100,000 advancement as stated in the will. If the estate is distributed as the will provides the four children will not have received equal shares of the estate.
During a four-way telephone conference in January 1984, the four heirs discussed a settlement agreement to distribute the estate differently than as directed in the will. After the telephone conference plaintiff, one of the four heirs, sent a mailgram to the other three heirs and to the estate's attorney "confirming" that an oral agreement had been reached. Two days later, however, defendant-appellee Ann T. McCaw (defendant), another of the four heirs, sent a letter in response. According to defendant, this letter disputes that any such agreement was reached. According to plaintiff, defendant's letter attempts to repudiate the agreement but acknowledges that the four heirs did reach an agreement.

I. Construction of the Will.
Plaintiff contends that the testatrix, in drafting her will, clearly made a mistake of fact with respect to Jean T. Hiestand, and that the mistake renders the will ambiguous as to how the estate should be divided. Because of that ambiguity, plaintiff argues, the trial court should have considered extrinsic evidence to determine the testatrix' true intent. According to plaintiff, the will in conjunction with extrinsic evidence shows that the testatrix' intent was to equalize the distribution of her estate among her four children.
Plaintiff is correct that the testatrix' intent is the "polestar" which must *735 guide the court's construction of the will. Gregg v. Gardner, 73 N.M. 347, 357, 388 P.2d 68, 75 (1963); In re Estate of Shadden, 93 N.M. 274, 279, 599 P.2d 1071, 1076 (Ct.App.), cert. denied, 93 N.M. 172, 598 P.2d 215 (1979). In this case, however, we agree with the trial court that any mistake of fact that the testatrix might have made is immaterial to a determination of her intent. First, it is the general rule that if a will unambiguously fixes the amount of an advancement and charges it against the person to whom it is stated to have been made, the will's statement as to such amount is conclusive, and extrinsic evidence is not admissible to show a mistake by the testator as to the fact or amount of the advancement. E.g., In re Estate of Miguet, 185 N.W.2d 508 (Iowa 1971); In re Estate of Kaldenberg, 254 Iowa 1333, 121 N.W.2d 108 (1963); Engemann v. Colonial Trust Co., 378 Pa. 92, 105 A.2d 347 (1954); Annot., 98 A.L.R.2d 273 (1964). Second, the testatrix in the instant case clearly and emphatically stated in the will her intent that her thinking regarding the value of advancements which she had made to her children should control the construction of the will. This was to hold true "whether I am wrong in any way in my thinking as to such values or not." In the face of such language, the court must distribute the estate as directed by the will. While extrinsic evidence is always admissible to aid in interpreting a will's provisions, In re Estate of Shadden, a court may not use extrinsic evidence to vary from or contradict the language of an unambiguous will or to defeat a testator's intent. Gregg v. Gardner; Portales National Bank v. Bellin, 98 N.M. 113, 645 P.2d 986 (Ct.App. 1982).
Accordingly, the trial court is affirmed on this point.

II. Family Settlement Agreement.
Plaintiff's first contention with respect to the settlement agreement among the heirs is that Pennsylvania rather than New Mexico law should govern the question of the agreement's validity. Plaintiff's argument, essentially, is that this is a contract question and, under New Mexico conflict of law principles, it is governed by the law of Pennsylvania, where defendant was located when she accepted the terms of the agreement. We disagree. New Mexico law applies.
In New Mexico the validity of an agreement among the heirs to distribute an estate other than as directed in the will is clearly a matter of probate law, covered by a statute in the Probate Code. NMSA 1978, § 45-3-912. It is undisputed in this case that the applicable probate law is New Mexico's. The issue presented, then, is whether the purported agreement in this case is valid under New Mexico's statute, Section 45-3-912.
Section 45-3-912 provides, in pertinent part, that:
Subject to the rights of creditors and taxing authorities, competent successors may agree among themselves to alter the interests, shares or amounts to which they are entitled under the will of the decedent, or under the laws of intestacy, in any way that they provide in a written contract executed by all who are affected by its provisions. The personal representative shall abide by the terms of the agreement... . (Emphasis added.)
Plaintiff contends that the heirs entered into a valid and binding agreement, under this statute, through their telephone conversation and subsequent writings. Plaintiff's position is that the requirement of a writing in Section 45-3-912 is, in effect, a "mini-statute of frauds": it does not require that the agreement be embodied in a formal, written document, but only that there be a writing or writings, signed by all the parties to be charged, which contain the essential elements of the contract. See Pitek v. McGuire, 51 N.M. 364, 184 P.2d 647 (1947) (discussing statute of frauds). This requirement of a writing or writings is satisfied, according to plaintiff, by: plaintiff's mailgram to the other heirs "confirming" the agreement; defendant's signed letter in response; and an affidavit signed by all of the heirs except defendant. According to plaintiff it is not significant that defendant's letter repudiates the agreement *736 since it acknowledges that an oral agreement did exist. See Webb v. Woods, 176 Okla. 306, 55 P.2d 959 (1936); 2 Corbin, Contracts § 511 (1950).
We agree with plaintiff that Section 45-3-912 is effectively a mini-statute of frauds which does not require that the agreement be in the form of a single formal document.
The law traditionally favors family agreements which avoid a will contest or promote the settlement and distribution of an estate. Prude v. Lewis, 78 N.M. 256, 430 P.2d 753 (1967); Hughes v. Betenbough, 70 N.M. 283, 373 P.2d 318 (1962); Drummond v. Johnson, 643 P.2d 634 (Okla. 1982); Annot., 29 A.L.R.3d 8 (1970). Such agreements avoid both family discord and the expense of litigation. Courts have specifically extended this doctrine to agreements among family members, who are beneficiaries, to distribute an estate differently than as prescribed in the will. Hughes v. Betenbough; St. Louis Union Trust Co. v. Conant, 499 S.W.2d 761 (Mo. 1973). As a general rule, such agreements are valid even if entirely oral, absent a statute to the contrary, unless for some other reason the agreement comes under the statute of frauds. See Annot., 29 A.L.R.3d 8 § 5.
This Court has long held that statutes in derogation of the common law are to be strictly construed. State v. Chavez, 70 N.M. 289, 373 P.2d 533 (1962); El Paso Cattle Loan Co. v. Hunt, 30 N.M. 157, 228 P. 888 (1924). "`No statute is to be construed as altering the common law, further than its words import.'" State v. Chavez, 70 N.M. at 291, 373 P.2d at 534 (quoting from Shaw v. Railroad Co., 101 U.S. 557, 565, 25 L.Ed. 892 (1879)). A statute must not be construed so strictly as to defeat its purpose, see Albuquerque Hilton Inn v. Haley, 90 N.M. 510, 565 P.2d 1027 (1977), but even narrowly construed as a mini-statute of frauds, Section 45-3-912 fully serves the purpose of guarding against fraud or perjury. See Pitek v. McGuire; In re Estate of Vincioni, 102 N.M. 576, 698 P.2d 446 (Ct.App.), cert. denied, 102 N.M. 613, 698 P.2d 886 (1985). We therefore interpret Section 45-3-912 as imposing a writing requirement no stricter than that imposed by the general statute of frauds.
Plaintiff is also correct that, for purposes of Section 45-3-912, it is not necessarily significant that defendant's letter repudiates any agreement the heirs might have reached, if the letter acknowledges that the agreement was reached. See Webb v. Woods; 2 Corbin, Contracts § 511.
We offer no opinion, however, on whether the letter and other documents offered by plaintiff are sufficient under Section 45-3-912 to show an agreement. The trial court, as a matter of law, did not permit the introduction of the documents into evidence. We remand the cause for the taking of evidence and for a determination as to whether the heirs entered into a written agreement in accordance with Section 45-3-912.
The cause is remanded for proceedings consistent with this opinion.
IT IS SO ORDERED.
SOSA, Senior Justice, and RIORDAN, J., concur.