741 P.2d 1374

Deanne MILLER, as Personal Representative of the Estate of Jerry Rose, Deceased, and Julie Rose, Individually and as Mother and Next of Friend of Jarrod Rose, a Minor, Petitioners,

v.

The NEW MEXICO DEPARTMENT OF TRANSPORTATION, and Al J.C. De Baca, Ajax International Ltd., a corporation, and David L. Barr, Respondents,

No. 17005.

Supreme Court of New Mexico.

Sept. 3, 1987.

Matias A. Zamora, D. Diego Zamora, Bachicha Legal Services, P.A., Frank Bachicha, Jr., Berman & Glenn, Jeffrey Glenn, San Francisco, Cal., for petitioners.

Montgomery & Andrews, Terri A. Mazur, John B. Pound, Stephen S. Hamilton, Santa Fe, for respondents.

William H. Carpenter, Albuquerque, amicus curiae N.M. Trial Lawyers Ass'n.

## OPINION

WALTERS, Justice.

On July 1, 1982, the New Mexico Department of Transportation (DOT) issued an oversize vehicle permit to Ajax International, Ltd. for the transport of a 14–foot wide mobile home on U.S. Highway 64 between Taos and Eagle Nest over the Fourth of

July weekend.[1] On Saturday, July 3, 1982, decedent Jerry Rose was driving his pickup truck west on U.S. 64, accompanied by his wife and son, when a collision occurred with the eastbound mobile home being towed by Ajax. Three witnesses gave deposition testimony stating that they had seen the mobile home repeatedly crossing over the center line of the roadway. As a result of the collision, Jerry Rose died and his family members were injured.

This suit was brought by the personal representative of decedent's estate, and by decedent's wife and minor child against Ajax, and against two named individuals and the DOT.

The action against the DOT was brought pursuant to the Tort Claims Act, NMSA 1978, Sections 41–4–1 through –13 (Cum. Supp.1984), in which plaintiffs alleged that DOT negligently maintained U.S. 64 by issuing the permit to Ajax to transport the mobile home over a narrow and winding highway during a busy holiday weekend. Claiming immunity from suit in that the waiver of immunity provided for in Section 41–4–11(A) of the Act does not apply, DOT moved for summary judgment. After briefing and oral argument on the motion, the district court granted the motion and dismissed the claims against DOT. Plaintiffs appealed the ruling, and the court of appeals affirmed. We granted certiorari, and permitted the filing of an amicus brief. We reverse the entry of summary judgment and remand for further proceedings.

The issue in this case is whether the DOT's issuance of an oversize vehicle permit is conduct that might fall within the statutory waiver of immunity provided for in Section 41–4–11(A). The relevant portion of that section provides that the immunity granted under the Act "does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of

their duties in the maintenance of * * * any * * * highway * * *." In determining legislative intent, we look not only to the language used in the statute, but also to the object sought to be accomplished and the wrong to be remedied. *Richards v. Mountain States Mut. Casualty Co.*, 104 N.M. 47, 49, 716 P.2d 238, 240 (1986). The court of appeals interpreted the 'word "maintenance" purportedly "from the ordinary meaning of the words used," but apparently without looking also to the object to be accomplished by the legislation. Indeed, *Smith v. Village of Corrales*, 103 N.M. 734, 713 P.2d 4 (Ct.App.1985), a case heavily relied upon by the court of appeals in this case, set forth a two-step approach in analyzing the Act's waivers of immunity; that approach is consistent with this Court's determination in *Richards*.

The *Smith* court said that "[i]n applying these waivers of immunity, we first determine the legislative intent in the enactment of the waiver and then interpret the language of the waiver according to its plain meaning." *Id.* at 736, 713 P.2d at 6. Thus, according to *Smith*, the words used in a statutory waiver provision must first be interpreted in light of the intended purpose of the provision. We consistently have given a construction to the Act that would effect its remedial intentions. *See Holiday Management Co. v. City of Santa Fe*, 94 N.M. 368, 610 P.2d 1197 (1980).

The court of appeals has expressly recognized that the "[m]aintenance of a road or highway involves more than simply keeping the road surface in good repair." *Fireman's Fund Ins. Co. v. Tucker*, 95 N.M. 56, 58, 618 P.2d 894, 896 (Ct.App.1980). "In providing the highway maintenance exception to the general grant of immunity, the New Mexico Legislature intended to protect the general public from injury by imposing liability upon governmental agencies when they fail to maintain safe public highways." *Id.* at 59, 618 P.2d at 897. We decline to hold that "maintenance" of a

1. It is unlawful to transport extra wide loads over New Mexico highways without first obtaining a permit issued by the DOT. *See* NMSA 1978, § 66–7–413 (Cum.Supp.1986).

highway must be limited only to physical care and upkeep; the obvious purpose for imposing the duty on public employees of maintaining highways safely and in a non-negligent manner reflects the legislature's intent that highways be so maintained as to provide for the safety of the traveling public. The court of appeals, in affirming the district court, erred in applying an unduly restrictive interpretation to the language and scope of the waiver of immunity provision, without sufficient regard to the purpose for which waiver of immunity was legislated. *See generally In re Estate of Cruse*, 103 N.M. 539, 542, 710 P.2d 733, 736 (1985) (a statute must not be construed so strictly as to defeat its purpose).

We recognize that the court of appeals relied on language in *Smith, i.e.,* that "[t]he term 'maintenance' in the context of [Section 41–4–11(A)] generally means the care or upkeep of something." *Smith,* 103 N.M. at 736, 713 P.2d at 6 (citing *Webster's Third New International Dictionary* (1966)); *see also Grano v. Roadrunner Trucking, Inc.,* 99 N.M. 227, 228, 656 P.2d 890, 891 (Ct.App.1982), *cert. denied,* 99 N.M. 358, 658 P.2d 433 (1983) and *Cardoza v. Town of Silver City,* 96 N.M. 130, 134, 628 P.2d 1126 (Ct.App.1981) (relying on a California case for defining "maintenance" as upkeep and repair); *but see Fireman's Fund Ins. Co. v. Tucker,* 95 N.M. at 60, 618 P.2d at 898 (Ct.App.1980) ("maintaining the highway means keeping it safe for public use"). We do not dispute that one of the meanings of "maintenance," standing alone, is the care or upkeep of something. "Maintain," in the same dictionary source, is also defined as "persistent upholding of something as * * * acceptable." As we have said, however, we must look not only to a selective dictionary definition of words used in a statute, but also to the legislative intent underlying its enactment. *See Richards; see also Smith.* The sole purpose of waiver in Section 41–4–11(A) is to ensure that highways are made and kept safe *for the traveling public. See Fireman's Fund,* 95 N.M. at 59, 618 P.2d at 897. Although the opinion of the court of appeals notes that its cases since *Fireman's Fund* have not relied on the definition of "maintenance" used in that case, *Fireman's Fund* is still good law. It correctly addressed the apparent and patent intent of the legislature which underlay Section 41–4–11(A).

Statutes are to be read in a way that facilitates their operation and the achievement of their goals. *See Mutz v. Municipal Boundary Comm'n,* 101 N.M. 694, 698, 688 P.2d 12, 16 (1984). Accordingly, "maintenance" of a highway for purposes of Section 41–4–11(A) must be held to include more than physical care and upkeep of the roadway itself. Indeed, we have previously held that "the absence of traffic controls is a condition of a highway and is, therefore, *the subject of maintenance"* within Section 41–4–11. *Grano v. Roadrunner Trucking,* 99 N.M. at 228, 656 P.2d at 891 (emphasis added). Similarly, we think that an oversize load being towed over a curving two-lane mountain highway during a holiday period, when there is historical assurance of increased travel by motorists, could create a condition not protective of public safety on that highway, and thus within the waiver provisions of Section 41–4–11.

Our construction of "maintenance," for purposes of the Act, is that the DOT's issuance of oversize vehicle permits may have a bearing upon the proper "maintenance" of a highway. We hold, therefore, that any alleged negligent conduct of DOT in authorizing oversize loads traveling over New Mexico highways deprives DOT of the defense of immunity by reason of the waiver provision of the Act.

The summary judgment granted in favor of DOT on grounds of immunity, and its affirmance by the court of appeals, was error and we reverse. We remand this case for reinstatement of the claims against DOT.

IT IS SO ORDERED.

RANSOM, J., and FRUMAN, Court of Appeals Judge, by designation, concur.

SOSA, Sr. J., dissenting without opinion.

STOWERS, J., dissents.

STOWERS, Justice, dissenting.

I dissent.

The sole issue in this case is whether the issuance of an oversize vehicle permit constitutes the maintenance of a highway.

The statutory section in issue is NMSA 1978, Section 41–4–11(A) (Repl.Pamp.1986) which states in pertinent part: "The immunity granted * * * does not apply to liability for damages * * * caused by the negligence of public employees while acting within the scope of their duties *in the maintenance* of or for the existence of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area" (emphasis added). The act in this case was the issuance of a permit.

"Issue" is defined in *Black's Law Dictionary* 964 (rev. 4th ed. 1968) as "[t]o send forth; * * * [t]o put into circulation * * * to deliver." "Issue" is defined in *Webster's New World Dictionary,* 749 (2d College ed. 1980) as "to give or deal out; distribute." "Maintenance," on the other hand, is defined in *Black's Law Dictionary* 1106 (rev. 4th ed. 1968) as the "[a]ct of maintaining, keeping up" or as "[t]he upkeep, or preserving the condition of property to be operated" (citing *Orleans Parish School Bd. v. Murphy,* 156 La. 925, 101 So. 268 (1924)). Again, *Webster's New World Dictionary* 854 (2d College ed. 1980) defines "maintenance" as "the work of keeping a building, machinery, etc. in a state of good repair."

Does the issuance of a permit constitute the maintenance of a highway? To ask the question is to answer it, and the answer is obviously no. As was pointed out in *Cardoza v. Town of Silver City,* 96 N.M. 130, 134, 628 P.2d 1126, 1130 (Ct.App.), *cert. denied,* 96 N.M. 116, 628 P.2d 686 (1981), " '[m]aintenance' means 'upkeep and repair' " (quoting *Clay v. City of Los Angeles,* 21 Cal.App.3d 577, 98 Cal.Rptr. 582 (1971)).

Further, NMSA 1978, Section 41–4–2(A) (Repl.Pamp.1986) of the Tort Claims Act, entitled "Legislative declaration" states as follows: "Consequently, it is declared to be the public policy of New Mexico that governmental entities and public employees shall *only* be liable within the limitations of the Tort Claims Act [41–4–1 to 41–4–27 NMSA 1978] and in accordance with the principles established in that act." (Emphasis added.)

To reach the conclusion reached by the majority in this case, we must ignore the clear language used by the Legislature in the statute in question, 41–4–11(A), and we must also ignore the clear meaning of the words used therein. And this, we have repeatedly said, we will not do.

For these reasons, I dissent.