845 P.2d 844

**Pat JOHNSON, as next friend and parent of Dawn Johnson, Plaintiff–Appellant,**

v.

**SCHOOL BOARD OF ALBUQUERQUE PUBLIC SCHOOL SYSTEM, Defendant–Appellee.**

**No. 13036.**

Court of Appeals of New Mexico.

Nov. 25, 1992.

Certiorari Denied Jan. 6, 1993.

William S. Ferguson, Ferguson & Lind, P.C., Albuquerque, for plaintiff-appellant.

Eleanor K. Bratton, George R. McFall, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for defendant-appellee.

## OPINION

BIVINS, Judge.

Plaintiff appeals a summary judgment in favor of Defendant School Board of Albuquerque Public School System (APS).[1] The complaint seeks damages for injuries suffered by Plaintiff's daughter, Dawn Johnson, who allegedly was struck by a vehicle as she was leaving Manzano High School in Albuquerque. The parties focus their arguments on appeal on the following issue: whether the immunity granted under the Tort Claims Act, NMSA 1978, Sections 41–4–1 through –29 (Repl.Pamp.1989), has been waived under Section 41–4–11 of that Act pertaining to maintenance of streets. However, the dispositive issue in deciding the waiver question is whether APS had a responsibility at all to maintain a crosswalk and accompanying signs and signals in front of the school. Duty or responsibility is not provided in the Tort Claim Act; it must be found outside the Act either at common law or by statute. We hold APS has no such responsibility and affirm.

As presented, we understand that the facts giving rise to the accident are either not in dispute or, if they are disputed in some particulars, these factual disputes are not material to resolving the legal question raised. *See Tapia v. Springer Transfer Co.*, 106 N.M. 461, 463, 744 P.2d 1264, 1266 (Ct.App.) (summary judgment proper even though disputed facts remain, if those facts not material), *cert. quashed*, 106 N.M. 405, 744 P.2d 180 (1987); *Sanders v. Smith*, 83 N.M. 706, 709, 496 P.2d 1102, 1105 (Ct. App.) (where facts not in dispute, but only their legal effect, summary judgment may be properly granted (quoting *Pederson v. Lothman*, 63 N.M. 364, 367, 320 P.2d 378, 379 (1958))), *cert. denied*, 83 N.M. 698, 496 P.2d 1094, *and*, 83 N.M. 698, 496 P.2d 1094 (1972). With that in mind, we set forth our understanding of the facts as presented in the briefs.

Dawn and some twenty other students were kept after school for detention. School lets out at Manzano at 2:30 p.m. The City of Albuquerque (the City) had installed school zone signals on Lomas Boulevard at the east and west end of the campus. These signals consist of signs and flashing lights, and the lights are set to flash between 2:30 and 2:50 p.m. on school days. The signals warn traffic to slow to 15 m.p.h. within the school zone. APS claims, and Plaintiff does not contest, that the City installed, operates, and maintains these flashing signals as well as other signs at a crosswalk which, we understand, transverses Lomas Boulevard within the school zone. Lomas runs east and west in front of Manzano High School.

Dawn was dismissed at 3:30 p.m., but remained with a friend until 3:55 p.m. According to APS's brief, Dawn "skipped or hopped or spun backwards off the sidewalk and into the street on Lomas" and was struck by a vehicle. Plaintiff does not disagree. This occurred at or near the crosswalk. The signals at both ends of the school zone had stopped flashing before the accident occurred.

Plaintiff contends APS was negligent in two particulars: (1) not scheduling the flashing signals to operate for as long as students remained under the school's control; and (2) not maintaining, or warning of the absence of, the "school crossing" signs at the crosswalk over Lomas Boulevard.

---

1. During the pendency of this appeal, this court filed its opinion in this case addressing the question whether failure to timely file a docketing statement deprives the appellate court of jurisdiction. We held it did not. *See Johnson v. School Bd. of Albuquerque*, 113 N.M. 117, 118, 823 P.2d 917, 918 (Ct.App.1991).

Section 41–4–2 of the Tort Claims Act provides in part: "[I]t is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act * * * " Further, Section 41–4–4(A) provides that a "governmental entity and any public employee while acting within the scope of duty [shall be] granted immunity from liability for any tort except as waived by [the Act]." *See also Pemberton v. Cordova*, 105 N.M. 476, 477, 734 P.2d 254, 255 (Ct.App.1987). It is undisputed that APS comes within the definition of "governmental entity." *See* §§ 41–4–3(B) and (C). Thus, in order to assert a claim in tort against APS, Plaintiff's cause of action must fit within one of the enumerated exceptions to the immunity granted by the Act. *See* §§ 41–4–4 to –12.

Plaintiff asserts that APS's immunity is waived in this case under Section 41–4–11(A), which provides:

The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties *in the maintenance of or for the existence of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area.*[2] (Emphasis added.)

Plaintiff claims that APS falls within the street maintenance language of Section 41–4–11(A). To advance this claim, Plaintiff asserts that APS had a responsibility to maintain the crosswalk, signals, and signs on the street abutting the school. Plaintiff relies on NMSA 1978, Section 66–7–336 (Repl.Pamp.1987), which provides:

A. Crosswalks may be established over highways abutting a school or the grounds adjacent thereto, and all children crossing the highways shall be required to do so within the marked cross-

walks. The state highway commission, with respect to state highways, and local authorities, with respect to streets under their jurisdiction, *with advice of the local superintendent of schools*, shall establish and mark, or cause to be marked, these highway crossings.

B. Crosswalks over highways not abutting on school grounds may be established by the state highway commission, with respect to state highways, and by local authorities, with respect to streets under their jurisdiction, with advice of the local superintendent of schools and after adequate assurance has been given that proper safety precautions, pursuant to regulations of the state highway commission and of the local authorities. Responsibility for maintaining the crossing will be with the appropriate county or municipality wherein the school is located.

C. At all school crossings except as provided in this section appropriate signs shall be provided as prescribed by the state highway commission or local authorities within their respective jurisdictions, indicating the crossings and regulating traffic movement within the school zones.

D. School crossings are not required to be specially posted when they are located:

(1) at a signalized intersection;

(2) at an intersection where traffic is controlled by a stop sign; or

(3) at a point where a pedestrian tunnel or overhead crossing is provided. (Emphasis added.)

Since the accident occurred at or near a crosswalk over a street abutting a school, we focus on Subsection A. The critical language under that subsection is "with advice of the local superintendent of schools." Does that language impose a responsibility on APS to maintain the crosswalk over the abutting street, including

---

**2.** We note that this section was amended, effective July 1, 1991. Because the amendment became effective while this case was pending on appeal, it does not apply to the present proceeding. N.M. Const. art. IV, § 34; *US Life Title Ins. Co. v. Romero*, 98 N.M. 699, 703, 652 P.2d 249, 253 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794, *and cert. quashed*, 98 N.M. 762, 652 P.2d 1213 (1982). Moreover, the amendment does not change the meaning of the section, at least for the purpose of this appeal.

maintaining flashing signals and signs? We hold it does not.

In applying waivers of immunity under the Tort Claims Act, we first seek the legislative intent behind enactment of the waiver in the meaning of the words used. *McCurry v. City of Farmington*, 97 N.M. 728, 731, 643 P.2d 292, 295 (Ct.App.1982) (citing *Arnold v. State*, 94 N.M. 381, 383–84, 610 P.2d 1210, 1212–13 (1980)); *see also Security Escrow Corp. v. State Taxation & Revenue Dep't*, 107 N.M. 540, 543, 760 P.2d 1306, 1309 (Ct.App.1988) (discussion of rules of statutory interpretation). When the words used are "free from ambiguity and doubt and express plainly, clearly, and distinctly the sense of the legislature, no other means of interpretation should be resorted to." *McCurry*, 97 N.M. at 731, 643 P.2d at 295.

Applying these principles of statutory interpretation, we find that summary judgment was properly granted. The language of Section 66–7–336(A) plainly places the responsibility for establishing school crossings on the state highway commission, with respect to state highways, and on local authorities, with respect to streets under their jurisdiction. Under Section 66–7–336(A), the only involvement of the local superintendents of schools is to provide advice to those authorities who have the responsibility for establishing and marking school crossings.

Since the legislature has not defined the key words in Section 66–7–336(A), we give those words their ordinary meaning. *See Security Escrow*, 107 N.M. at 543, 760 P.2d at 1309. In the context of the Section, "establish" means "to place, install, or set up in a permanent or relatively enduring position." Webster's Third New International Dictionary 778 (1971). The term "advice" means "opinion * * * [a] recommendation regarding a decision or course of conduct." *Id.* at 32. Thus, applying the plain meaning standard and giving these words their ordinary meaning, we believe the statute requires that the state highway commission or local authority install the crossings after eliciting recommendations from the local superintendent of schools. This reading is logical because one could assume that the school superintendent would be able to recommend the most appropriate placement and design of the crosswalks.

Giving advice on establishment of crosswalks does not impose responsibility for maintenance of crosswalks on APS. In *McLaughlin v. City of Roswell*, 161 Ga. App. 759, 289 S.E.2d 18 (1982), a student was injured when struck by an automobile as she was attempting to cross a street to attend school. Suit was brought against the City of Roswell for failure to provide a crossing guard so children could safely reach the school. The appellate court upheld judgment on the pleadings in favor of the City of Roswell, holding that the City was not required by statute to provide school crossing guards. *Id.* 289 S.E.2d at 19. Rather, the court stated, the City of Roswell was required to *"advise"* the school board and school superintendent on safety standards. *Id.* Although the roles of the City and the school board are reversed in the case before us, an analogous result obtains. Under Section 66–7–336(A), the responsibility for establishing and marking school crossings rests with the City of Albuquerque. The role of APS is limited to providing advice. To be subject to a waiver of immunity, APS would have to be responsible for the "maintenance" of the school crossings. *See* § 41–4–11(A). Merely advising the City on placement and design does not qualify as responsibility for maintenance. We cannot conclude that the legislature intended for school districts to have any responsibility for maintenance when it authorized school superintendents only to provide advice. Nor can we conclude that immunity is waived in this case, since APS has no responsibility for street maintenance and, thus, does not fall within the Section 41–4–11(A) street maintenance waiver.

Relying on *Schleft v. Board of Education*, 109 N.M. 271, 784 P.2d 1014 (Ct. App.), *cert. denied*, 109 N.M. 232, 784 P.2d 419 (1989), Plaintiff argues that APS's responsibility extends beyond the school grounds. In that case, this Court said: "We believe it was not the legislature's intent that waiver of immunity stop at the schoolhouse door." *Id.* 109 N.M. at 273,

784 P.2d at 1016. The plaintiff in *Schleft* relied on waiver of immunity under Section 41–4–6, which concerns the operation or maintenance of any building. In that case, a boy received an electrical shock when he climbed on a transformer owned and operated by a third party but located on the school grounds. We held that the "building exception" under Section 41–4–6 "applies to maintenance of the school grounds as well as to the school building itself." *Id.* We believe *Schleft* is distinguishable.

In *Schleft*, the accident occurred on the school grounds. We stressed that the transformer, the alleged dangerous condition, existed "on an easement that in turn [was] located *on* the landowner's property, not *outside* of it." *Id.* at 275, 784 P.2d at 1018 (emphasis in the original). We relied on the location of the transformer in determining that it was irrelevant to the Section 41–4–6 waiver inquiry that the defendant Board of Education (the Board) claimed that, because the transformer was located on a third-party-owned easement, the Board had no control over, or right to maintain, the transformer. *Id.* at 273–75, 784 P.2d at 1016–18 (these facts found irrelevant to waiver issue based on later discussion of the Board's duty to the plaintiff). Here, the school crossing, the flashing signals, and the signs, the alleged dangerous conditions, clearly were outside the school grounds.

This distinction between *Schleft* and the case before us is supported by *Bober v. New Mexico State Fair*, 111 N.M. 644, 808 P.2d 614 (1991), in which our Supreme Court interpreted Section 41–4–6. *Bober*, which concerned an auto accident that occurred as a stream of traffic exited the New Mexico State Fairground after a concert, dealt with whether the State Fair could be held liable for "a dangerous condition on their premises that had consequences off the premises." *Monett v. Dona Ana County Sheriff's Posse*, 114 N.M. 452, 459, 840 P.2d 599, 606 (Ct.App. 1992) (applying *Bober*); *see Bober*, 111 N.M. at 646–47, 808 P.2d at 616–17 ("The principal issue on appeal is [whether] * * * since the accident took place outside the Fairground, and since Bober was a mere

passerby * * * the State Fair owed her no duty and was therefore entitled to judgment as a matter of law."). The Supreme Court interpreted Section 41–4–6, the building exception, and found that the State Fair's immunity under the Tort Claims Act had been waived. *Id.* at 652–53, 808 P.2d at 622–23. In so doing, the Court, while broadly interpreting the term "premises liability," as it applies to Section 41–4–6, to include injuries occurring both on and off certain premises, continued to limit liability to those " 'injur[ies] aris[ing] from an unsafe, dangerous, or defective condition *on* property owned and operated by the government.' " *Id.* at 653, 808 P.2d at 623 (quoting *Castillo v. County of Santa Fe*, 107 N.M. 204, 205, 755 P.2d 48, 49 (1988) (emphasis added)).

Plaintiff also argues that modifications to Subsection B of Section 66–7–336 support the claim that APS is responsible under Subsection A for maintaining crosswalks. Subsection B pertains to crosswalks over highways not abutting school grounds. While acknowledging that this subsection does not apply to facts of this case, Plaintiff notes that an earlier version of the subsection placed responsibility for maintenance of "safety precautions" on the school authorities. *See* NMSA 1953, § 64–18–35(B) (Supp.1955). In 1975, the legislature amended Subsection B, placing that responsibility on the county or municipality. *See* NMSA 1953, 2nd Repl.Vol. 9, Pt. 2 (1960), § 64–18–35(B) (Supp.1975). That version provides in pertinent part: "Responsibility for maintaining the crossing will be with the appropriate county or municipality wherein the school is located." *Id.* That same language appears in the current enactment quoted above.

Plaintiff argues that the legislature, by its 1975 amendment, demonstrated that it understood how to allocate responsibility and, by choosing not to amend Subsection A, it chose not to remove responsibility for maintenance from the school boards. We point out, however, that the legislature had no need to remove responsibility under Subsection A because that subsection had never imposed responsibility, unlike Subsection B. To be sure, it might, perhaps, have been better draftsmanship to either delete the earlier language from Subsec-

tion B without adding substitute language, or delete the earlier Subsection B language and add substitute language to both Subsections A and B. Nevertheless, we believe, given the legislative history of Subsection B, that the legislature clearly did not intend to impose (or continue imposing) responsibility for school crossing maintenance on the school boards under Subsection A when it amended Subsection B. Further, an appellate court may not read into a statute language which is not there, particularly if it makes sense as written. *See State ex rel. Barela v. New Mexico State Bd. of Educ.,* 80 N.M. 220, 222, 453 P.2d 583, 585 (1969).

To interpret Section 66–7–336 as Plaintiff suggests would require us to read into Subsection A duty to maintain, when the words of the statute impose none, while reading Subsection B to impose no such duty because it expressly places the responsibility for maintenance on the counties and municipalities. We decline to do this. We think the added language in Subsection B was inserted in 1975 to make clear that the school boards no longer have maintenance responsibilities. No similar language was inserted in Subsection A because the school boards never had any maintenance responsibilities, from inception, under that part of the statute.

We have also considered Plaintiff's reliance on New Mexico Attorney General Opinion 6073 (1955) and find it inapplicable to the question before us. That opinion dealt with an even earlier version of Section 64–18–35(B) concerning the maintenance of guards at nonabutting crosswalks.

Because APS had no responsibility for maintaining the crosswalk and accompanying signs and signals in front of the school, we hold that the Section 41–4–11(A) street maintenance waiver of immunity is inapplicable to APS.

IT IS SO ORDERED.

ALARID, C.J., and APODACA, J., concur.